IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

LEONARD JOSEPH YANKTON, Natural Person;

Plaintiff,

vs.

CITY OF LINCOLN AND LANCASTER COUNTY, LINCOLN POLICE DEPARTMENT, GREGORY CODY, OFC, individually and in his official capacity as OFC#830 Lincoln Police Department Officer; and AARON PETH, OFC, individually and in his official capacity as OFC#1724 Lincoln Police Department Officer;

Defendants.

4:18CV3026

**MEMORANDUM AND ORDER**

This matter is before the Court on cross-motions for summary judgment filed by the plaintiff, Filing No. 28, and by defendants Gregory Cody and Aaron Peth, Filing No. 36.[1]

This is an action for deprivation of rights under 42 U.S.C. § 1983 in connection with police conduct in responding to a domestic dispute call.

I.  BACKGROUND

In his *pro se* amended complaint, the plaintiff, a Native American, alleges that Officer Peth and Officer Cody violated his rights in three ways: conducting an illegal search and seizure by wrongfully arresting him, using excessive force to effectuate that

---

[1] Also pending is defendants' motion to strike the plaintiff's brief under Federal Rule of Civil Procedure 12(f), as untimely. In the interest of justice, that motion will be denied.

1

arrest, and treating him in a discriminatory manner based on his Native American race. The plaintiff's allegations are summarized in the Court's earlier Memorandum and Order on the defendants' motion to dismiss and need not be repeated here. *See* Filing No. 14, Memorandum and Order at 1-2.

Defendants Cody and Peth move for summary judgment based on qualified immunity. They contend both officers' actions were reasonable. Further, they claim the plaintiff has failed to provide proof sufficient to support his allegations. In support of their motion, the defendants submit several affidavits and attached exhibits. Filing Nos. 37-1 to 37-5.

Undisputed evidence shows that on August 23, 2017, Autumn Hallowhorn called 911 to report an assault by her boyfriend Lavay Yankton at her home located at 935 "A" Street in Lincoln, Nebraska. Filing No. 37-1, Affidavit of Mayde McGuire ("McGuire Aff.") at 1; Ex. A, Incident History Log; Ex. B, Transcript of Incident. Dispatchers routinely ask about defining physical characteristics of an assailant. Filing No. 37-1, McGuire Aff. at 2. The dispatcher taking the report inquired as to the race of the assailant and were told he was Native American. *Id.*

Lincoln Police Department Officers Gregory Cody and Aaron Peth were dispatched to the scene. *Id.* Other officers also responded. *Id.* at 2. Officer Cody states in his affidavit that he reviewed the alleged assailant's prior criminal history while being dispatched to the scene of the assault and determined that the alleged assailant had previous convictions for assault. Filing No. 37-3, Affidavit of Greg Cody ("Cody Aff.") at 1-2. He therefore treated the matter as a felony investigation. *Id.* at 2. Officers Cody and Peth both testified by affidavit that they and other LPD officers investigated

2

the alleged felony domestic assault and attempted to locate Yankton. *Id.* at 2-3; Filing No. 37-2, Affidavit of Aaron Peth ("Peth Aff.") at 2-3.

At the scene, Hallowhorn told officers she did not know where her assailant was, indicating he may have been in the shed in the backyard or possibly in the house at 935 "A" Street. Filing No. 37-1, Cody Aff. at 2; Filing No. 37-2, Peth Aff. at 2. In an attempt to locate Yankton, LPD officers knocked on the door at 935 "A" and received no response. *Id.* LPD officers walked into the backyard of 935 "A" and looked in the shed but did not locate Yankton there. Filing No. 37-3, Cody Aff. at 2. Officers observed an unknown female come out of the back door of 935 "A" who indicated she knew who Yankton was and that he was not in the residence. *Id.* The officers observed that someone locked the back door of 935 "A" from the inside after the woman had exited the residence. Filing No. 37-2, Peth Aff. at 2.

Officer Peth states that he and other officers asked the victim if it was her residence and she responded affirmatively. *Id.* at 3. The officers then obtained verbal consent from Hallowhorn to enter and search 935 "A," and they entered the premises through an unlocked door. *Id.* They found Joseph Yankton, the assailant's brother and a 14-year-old girl in the home. *Id.* Both individuals were taken outside of the home. *Id.*

As Officer Peth left the home, he saw a male, later identified as the plaintiff, talking loudly to Officer Cody. *Id.* The plaintiff told Officer Cody he could not talk to the girl who had been in the home. *Id.* at 3. The plaintiff stated he lived next door at 937 "A" Street and asked who had told the officers they could enter 935 A street. Filing No. 37-3, Cody Aff at 3. Also, the plaintiff told Joseph Yankton not to talk to the police. *Id.* at 3-4. Officer Cody asked the plaintiff to stop interfering with the investigation and to

3

leave. *Id.* at 4. The officer gave specific commands to the plaintiff to either go into his home or leave the area and he refused to do so. *Id.*

The officers state they had probable cause to believe the plaintiff was violating Lincoln Municipal Code 9.08.050 when the plaintiff failed to comply with Officer Cody's request to leave the area and stop interfering with the investigation.[2] *Id.* at 5; Filing No. 37-2, Peth Aff. at 4. Officer Cody informed the plaintiff he was being placed under arrest and handcuffed him, pursuant to LPD policy and for safety. Filing No. 37-3, Cody Aff. at 5, Ex. A, LPD General Order 1550. Unrefuted evidence shows the plaintiff was arrested and handcuffed and then issued a citation and released. Filing No. 37-3, Cody Aff. at 5-6, Ex. B, Police Report. The charge against the plaintiff was later dismissed.

The plaintiff responds with largely conclusory arguments. He alludes to an audio recording that would contradict the officers' affidavits but does not submit any affidavits or other evidence in support of that allegation. He also contends the evidence submitted by the officers is inherently contradictory. Further, he submits a newspaper article on criminal conduct by the officers that is unrelated to the incident at issue, as well as a link to a YouTube video.

II. LAW

On a motion for summary judgment, the question before the court is whether the record, when viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue as to any material fact and that the moving party is entitled to

---

[2] That ordinance provides:

> 9.08.050 Compliance With Order.
> It shall be unlawful for any person to intentionally or knowingly refuse to comply with an order of a police officer made in the performance of official duties at the scene of an arrest, accident, or investigation.

Filing No. 37-5, Affidavit of Teresa Meier, Ex. A.

judgment as a matter of law. Fed. R. Civ. P. 56(c); *Mansker v. TMG Life Ins. Co.*, 54 F.3d 1322, 1326 (8th Cir. 1995). Litigants who proceed pro se are entitled to the benefit of liberal construction at the pleading stage. *Quam v. Minnehaha Cty. Jail*, 821 F.2d 522, 522 (8th Cir. 1987). Nonetheless, the summary judgment standard set forth in Rule 56 of the Federal Rules of Civil Procedure remains applicable to pro se parties. *Id.* A party's *pro se* status does not excuse failure to comply with rules. See *Bennett v. Dr. Pepper/Seven Up, Inc.*, 295 F.3d 805, 808 (8th Cir. 2002).

A party cannot rely on unsworn/unattested declarations or statements to support or oppose a motion for summary judgment. *Banks v. Deere*, 829 F.3d 661, 667-68 (8th Cir. 2016); see *Crews v. Monarch Fire Prot. Dist.*, 771 F.3d 1085, 1092 (8th Cir. 2014) ("At summary judgment, the requisite 'genuine dispute' must appear in admissible evidence" (quoting Fed. R. Civ. P. 56(a))); *see also* Fed. R. Civ. P. 56(c)(2) (allowing a party to "object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence"). The district court is not required to "plumb the record in order to find a genuine issue of material fact." *Barge v. Anheuser–Busch, Inc.*, 87 F.3d 256, 260 (8th Cir. 1996).

The doctrine of qualified immunity "shields a government official from liability unless his conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Burns*, 752 F.3d at 1139 (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341(1986). Because it protects officials from the burden of defending insubstantial claims, as well as from damage liability, the Supreme Court has "stressed the

5

importance of resolving immunity questions at the earliest possible stage in litigation." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (quotation omitted). Analyzing a claim of qualified immunity requires a two-step inquiry: (1) determining whether the facts demonstrate a deprivation of a constitutional right, and (2) determining whether the implicated right was clearly established at the time of the deprivation. *Solomon v. Petray*, 699 F.3d 1034, 1038 (8th Cir. 2012).

To recover for a violation of a plaintiff's Fourth Amendment rights in a § 1983 action, a plaintiff must demonstrate a seizure occurred and the seizure was unreasonable. *McCoy v. City of Monticello*, 342 F.3d 842, 846-47 (8th Cir. 2003). The Fourth Amendment prohibits arrests without probable cause. *Beck v. Ohio*, 379 U.S. 89, 90–91 (1964). A claim of unlawful arrest "turns on whether [the plaintiff] presented sufficient facts from which a reasonable juror could find that [the officer] lacked probable cause to arrest him." *Foster v. Metro. Airports Comm'n*, 914 F.2d 1076, 1079 (8th Cir. 1990).

"'A warrantless arrest is consistent with the Fourth Amendment if it is supported by probable cause, and an officer is entitled to qualified immunity if there is at least arguable probable cause.'" *Hoyland v. McMenomy*, 869 F.3d 644, 652 (8th Cir. 2017) (quoting *Ulrich v. Pope Cnty.*, 715 F.3d 1054, 1059 (8th Cir. 2013) (internal quotation marks omitted). "Arguable probable cause 'is a mistaken but objectively reasonable belief the suspect committed a criminal offense.'" *Id.* (quoting *Dowell v. Lincoln Cnty.*, 762 F.3d 770, 777 (8th Cir. 2014)).

An officer's excessive use of force violates the Fourth Amendment if "objectively unreasonable." *Graham v. Connor*, 490 U.S. 386, 397 (1989); *Tatum v. Robinson*, 858

F.3d 544 (8th Cir. 2017); *Dooley v. Tharp*, 856 F.3d 1177, 1181 (8th Cir. 2017) (a plaintiff must show not only that force was used but "that the amount of force . . . used was not reasonable under the circumstances"). "Objective unreasonableness is 'judged from the perspective of a reasonable officer on the scene,' in light of 'the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'" *Tatum*, 858 F.3d at 547 (quoting *Graham*, 490 U.S. at 396). A non-resisting, non-fleeing individual suspected of a completed, non-violent misdemeanor is the type of individual against whom the use of force is "least justified." See *Small v. McCrystal*, 708 F.3d 997, 1005 (8th Cir. 2013). However, just because force is "least justified," does not mean it is never justified. *Tatum*, 858 F.3d at 549.

"'[T]he right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it.'" *Id.* at 550 (quoting *Graham*, 490 U.S. at 396). When a suspect poses a non-immediate safety threat by repeatedly refusing to comply with officers' reasonable, lawful commands, officers may reasonably use some force to secure compliance. *Id.*; see also *Hollingsworth v. City of St. Ann*, 800 F.3d 985, 988, 990 (8th Cir. 2015) (acknowledging it was reasonable to use "some force" when a recently arrested person repeatedly refused to change into a jumpsuit and waived a finger at officer, telling him not to use a taser).

To succeed on an equal protection claim, a plaintiff must show both that the enforcement had a discriminatory effect, and that the enforcement is motivated by a

7

discriminatory purpose. *United States v. Bell*, 86 F.3d 820, 822 (8th Cir. 1996). "Absent some evidence of racially disproportionate arrests compared to the actual incidence of violations by race, there is no basis for inferring racially selective law enforcement." *Id.*

III. DISCUSSION

The Court first finds that the plaintiff's motion for summary judgment should be denied. He has clearly failed to show he is entitled to judgment as a matter of law. He has not produced any evidence in support of his claims.

The defendant officers, on the other hand, have submitted unrefuted evidence that shows they are entitled to qualified immunity. The facts, viewed in the light favorable to the plaintiff, establish beyond genuine dispute that the defendants' actions did not rise to the level of a constitutional violation.

Undisputed evidence establishes that plaintiff was briefly taken into custody, cited for refusal to comply with a lawful order, and then released from custody. The plaintiff has not challenged the defendant officers' testimony that he interfered with the officers' investigation and did not follow the officers' commands. There is no dispute that the officers were performing official duties at the scene of an investigation. The only indication of any race-based motivation is the dispatcher's inquiry on the race of the domestic abuse assailant.

The officers observed Yankton failing to comply with Officer Peth's orders to stop interfering with their investigation. The evidence shows that it was objectively reasonable for the officers to believe that Yankton was violating the ordinance. When Yankton first interjected himself into the scene, the officers were in the early stages of an investigation into a report of domestic abuse. The assailant had not been located

and the officers had no information about Yankton's relationship to either the victim or the assailant. Yankton advised witnesses not to cooperate with the officers. The evidence shows it was a dynamically evolving and unsettled scene. The officers clearly had arguable probable cause to detain Yankton and to issue a citation for violation of the ordinance.

By Yankton's own account, he was detained for a short amount of time. The record shows he was handcuffed for approximately 15-20 minutes. The officers were at the scene for less than an hour and a half. Though he alleges the handcuffs were tight and uncomfortable, he does not allege any injuries from the handcuffs. *See, e.g., Chambers v. Pennycook*, 641 F.3d 898, 906–07 (8th Cir.2011) (because handcuffing inevitably results in minor irritation, injury, or discomfort, plaintiff must demonstrate something more to show that force applied in that context was excessive). Yankton has submitted no evidence to refute the officers' version of events. Contrary to Yankton's assertions, the officers' affidavits are consistent. The officers' testimony is consistent with the police reports and other contemporaneous records.

Viewing the evidence in the light most favorable to Yankton, there is no genuine issue of material fact on his claims because a reasonable officer at the scene could reasonably believe that Yankton was interfering in their felony investigation and there is no evidence that the officers used unreasonable force against him. Accordingly,

IT IS ORDERED:

1. The plaintiff's motion for summary judgment (Filing No. 28) is denied.

2. Defendants Gregory Cody's and Aaron Peth's motion for summary judgment (Filing No. 36) is granted.

3. Defendants' motion to strike the plaintiff's brief (Filing No. 42) is denied.

4. This action is dismissed.

Dated this 9th day of September, 2019.

BY THE COURT:

s/ Joseph F. Bataillon
Senior United States District Judge